```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
J.M. HALEY CORP.,

                    Plaintiff,

        -against-                        MEMORANDUM & ORDER
                                         15-CV-1227(JS)(AYS)
SHEET METAL WORKERS
INTERNATIONAL ASSOCIATION,
LOCAL 28, KEVIN CONNOR
in his capacity as President
of Local 28, BOB DIORIO in his
capacity as President/
International Trustee of Local 28,
JAMES CUIFFO in his capacity
as Secretary/Treasurer of
Local 28, ROBERT SOTO in his
capacity as Secretary/
Treasurer of Local 28, and
JOHN DOES 1-10,

                    Defendants.
----------------------------------X
```

APPEARANCES
For Plaintiff:            Ira D. Wincott, Esq.
                          Emanuel Kataev, Esq.
                          Joseph M. Labuda, Esq.
                          Milman Labuda Law Group, PLLC
                          3000 Marcus Avenue, Suite 3W8
                          Lake Success, NY 11042

For Defendants:
Sheet Metal Workers
International
Association, Local 28,
Kevin Connor, James
Cuiffo, Robert Soto,
and John Does 1-10        Denis A. Engel, Esq.
                          Colleran, O'Hara & Mills LLP
                          100 Crossways Park Drive West, Suite 200
                          Woodbury, NY 11797

Bob Diorio                Amy F. Shulman, Esq.
                          Broach & Stulberg, LLP

One Penn Plaza, Suite 2016
New York, NY 10119

SEYBERT, District Judge:

This case concerns alleged unlawful labor practices committed by a construction union. Plaintiff J.M. Haley Corp. ("Plaintiff") commenced this action against Defendants Sheet Metal Workers' International Association, Local 28 ("Local 28"), Bob Diorio, James Cuiffo, Robert Soto, and ten John Doe Defendants (collectively, "Defendants"), seeking relief pursuant to Section 303 of the Labor Management Relations Act of 1947 (the "LMRA"), as amended, 29 U.S.C. § 187, based on Defendants' violations of 29 U.S.C. § 158(b)(4) of the National Labor Relations Act (the "NLRA"). Both Diorio and the remaining Defendants have filed motions to dismiss the Complaint. (Docket Entries 18, 24.) For the foregoing reasons, Defendants' motions are GRANTED IN PART and DENIED IN PART.

BACKGROUND[1]

Plaintiff is a company in the business of installing sheet-metal ductwork in the tri-state area, and Local 28 is a labor organization that represents workers in the construction industry. (Compl. ¶¶ 12, 19.) Connors, Diorio, Cuiffo, and Soto (the "Individual Defendants") are all officers of Local 28, and the

---

[1] The following facts are drawn from Plaintiff's Complaint and are presumed to be true for the purposes of this Memorandum and Order.

John Doe defendants are alleged to be unknown agents and members of Local 28 who participated in the conduct at issue. (Compl. ¶¶ 14-18.) Plaintiff's employees are represented by Local 355 of the International Union of Journeymen and Allied Trades ("Local 355"), and not by Local 28. (Compl. ¶ 2.)

In 2008, Local 28 embarked on a campaign of "picketing and boycott activity" in an effort to force construction companies to stop doing business with Plaintiff. (Compl. ¶ 2.) Plaintiff alleges that Local 28 aimed to ensure that work Plaintiff contracted to perform was ultimately completed by Local 28 members. (Compl. ¶ 2.) More specifically, Plaintiff claims that Defendants engaged in concerted action on six different construction jobs in an effort to capture work for Local 28 members at Plaintiff's expense. (See Compl. ¶¶ 21-79.) Plaintiff's allegations concerning each job are summarized below.

I. The Novotel Contract

On December 10, 2012, Plaintiff contracted with Fleet Mechanical Systems ("Fleet") to provide services in connection with the construction of a Novotel hotel, located at 226 West 52nd Street in New York City. (Compl. ¶ 21.) InterServ LP ("InterServ") was the general contractor for the job. (Compl. ¶ 22.)

Plaintiff alleges that agents of Local 28 repeatedly called InterServ and told them not to use Plaintiff's services

3

because Local 28 was claiming the Novotel work, and Plaintiff was not a signatory to a collective bargaining agreement with Local 28.  (Compl. ¶ 24.)  On February 12, 2013, Local 28 engaged in a "general Picket in the lobby of the Novotel job demanding that Novotel and [InterServ] stop using [Plaintiff] and reassign the work to a Local 28 contractor."  (Compl. ¶ 25.)  The picketers stopped people from entering and exiting the building, and Daniel Fox, Jr., a business agent for Local 28, stated that Local 28 would "pick off" Plaintiff and other contractors that did not use labor belonging to the Building Trades Council, an organization that Local 28 belongs to.  (Compl. ¶ 23-26.)

Agents of Local 28 continued to threaten labor unrest unless Plaintiff was terminated from the job.  (Compl. ¶ 27.)  On February 14, 2013, Local 28 engaged in another general picket of the Novotel job and inflated a fifteen-foot rat balloon near the entrance to the project.  (Compl. ¶ 28.)  Threats to picket and inflate the rat balloon continued, and on February 21, 2013, Plaintiff was notified by Fleet, Novotel, and InterServ that Plaintiff's contract was terminated due to "Local 28's unlawful threats and coercion."  (Compl. ¶¶ 13-33.)

II. The Metadata Solutions Contract

On June 3, 2013, Plaintiff secured a contract to provide its services to Marlin, Inc. ("Marlin") for work on Medidata Solutions' office space, located at 350 Hudson Street in New York

4

City. (Compl. ¶ 35.) JRM Construction ("JRM") was the general contractor on the job and Marlin was the mechanical contractor. (Compl. ¶ 35.)

In August 2013, representatives of Local 28 and two other unions "claimed the Medidata sheet metal work for Local 28" and threatened to picket unless Plaintiff was terminated and the sheet-metal work was reassigned to a Local 28 contractor. (Compl. ¶ 36.)

On August 7, 2013 Local 28 again inflated a rat balloon near the entrance to the job site and picketed around the rat. (Compl. ¶ 38.) The very next day, a Local 28 agent texted Plaintiff that Local 28 was setting up a meeting to recruit Plaintiff's employees. (Compl. ¶ 39.)

III. The New York Presbyterian Hospital Contracts

In April 2012, Plaintiff secured a contract to provide services to Interstate Mechanical Services ("Interstate") on two construction projects for New York Presbyterian Hospital (the "Hospital jobs"). (Compl. ¶¶ 42-43.) Cauldwell Wingate ("Cauldwell") served as the general contractor for the Hospital jobs and Interstate served as the mechanical contractor. (Compl. ¶¶ 44-45.)

In late May or early June 2012, Local 28 "claimed the Hospital job[s] for itself" and threatened both Cauldwell and Interstate with "picketing, job shutdowns, and the inflation of a balloon rat" in an effort to have Plaintiff's contract terminated.

5

(Compl. ¶ 46.) Local 28 subsequently "cause[d] several of its members to patrol near the entrance of the hospital [,] impeding ingress and egress," and distributed a flyer which falsely stated that Plaintiff was an "unsafe contractor." (Compl. ¶¶ 47-48.) Because of Local 28's actions, Cauldwell and Interstate terminated Plaintiff's contract on the Hospital jobs. (Compl. ¶ 52.)

IV. <u>The 101 Avenue of the Americas Contracts</u>

On August 29, 2012, Plaintiff entered into two contracts to provide services to Henick-Lane, Inc. ("Henick") at 101 Avenue of the Americas in New York City. (Compl. ¶¶ 55-56.) Sciame Construction ("Sciame") was the general contractor and Henick was the mechanical contractor. (Compl. ¶¶ 57-58.)

On December 12, 2012, Local 28 once again inflated a rat balloon near the entrance to the building and "engaged in a general picket on the sidewalk." (Compl. ¶¶ 60-61.) The same day, representatives of Local 28 threatened Sciame and demanded that Plaintiff be replaced with a Local 28 contractor. (Compl. ¶ 62.) Sciame and Henick subsequently terminated Plaintiff from the project. (Compl. ¶¶ 64-65.)

V. <u>The Verizon Contract</u>

Plaintiff entered into a contract with GDO Contracting Corp. ("GDO") to provide services at Verizon, located on the seventh floor of 360 Bridge Street in Brooklyn, New York. (Compl. ¶ 68.) On-Trac Construction Associates ("On-Trac") served as the

6

general contractor on the project, and GDO was the mechanical contractor. (Compl. ¶¶ 71-72.)

Local 28 representatives demanded that Plaintiff hire its members to work on the Verizon job and stated their intention to threaten Verizon, On-Trac, and GDO if Plaintiff did not agree to do so. (Compl. ¶ 73.) As a result, Plaintiff hired four members of Local 28 to work on the Verizon job, which resulted in a "substantial increase in labor costs." (Compl. ¶¶ 75, 77.)

Plaintiff claims that Defendants' conduct on the various jobs referenced above constituted "unlawful secondary activity" prohibited by LMRA, and that Defendants tortuously interfered with their contracts on each job. (Compl. at 14-19.) Defendants move to dismiss the Complaint. Diorio principally argues (1) that he cannot be held liable as a union officer under Section 303 for actions taken by Local 28 and (2) that Plaintiff's tortious interference claim is preempted by Section 303. (Diorio Br., Docket Entry 19, at 4-14.) The remaining Defendants reiterate Diorio's arguments regarding individual liability and tortious interference, and add that the Complaint fails to state a claim upon which relief can be granted. (Defs.' Br., Docket Entry 24, at 12-115.)

## DISCUSSION

The Court will first address the legal standard before turning to Defendants' motions.

7

I. <u>Standard of Review</u>

In deciding Rule 12(b)(6) motions to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); <u>accord</u> <u>Harris v. Mills</u>, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). <u>First</u>, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678, 129 S. Ct. at 1949; <u>accord</u> <u>Harris</u>, 572 F.3d at 72. <u>Second</u>, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. <u>Iqbal</u>, 556 U.S. at 679, 129 S. Ct. at 1950. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>; <u>accord</u> <u>Harris</u>, 572 F.3d at 72.

In deciding a motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 71 (2d Cir. 1998). This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which

8

the Complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

## II. Plaintiff States a Claim under Section 303 of the LMRA

Defendants argue that the Complaint does not contain sufficient facts supporting Plaintiff's claim that it was subject to an unfair labor practice. (Defs.' Br. at 5-12.) The Court disagrees.

Section 303 of the LMRA makes it unlawful for "any labor organization to engage in any activity or conduct defined as an unfair labor practice . . . ." 29 U.S.C. § 187(a). Here, Plaintiff claims Defendants engaged in unlawful secondary activity, as defined within 29 U.S.C. 158(b)(4) of the NLRA. A union engages in primary activity when it "targets an employer with whom it has a dispute." Capitol Awning Co. v. Local 137 Sheet Metal Workers Int'l Ass'n, 698 F. Supp. 2d 308, 322 (E.D.N.Y. 2010). A union engages in secondary activity when it targets an employer or third-party that it does not have a dispute with to gain leverage over the employer it does have a dispute with. See id. "By placing enough pressure, [the] union might coerce a secondary employer to change its own business relationship with a primary employer, in such a way that is detrimental to the primary employer." C&D Restoration, Inc. v. Laborers Local 79, No. 02-

9

CV-9448, 2004 WL 736915, at *3 (S.D.N.Y. Apr. 5, 2004). Section 158(b)(4) broadly prohibits secondary activity, making it illegal for a union to "engag[e] in or induc[e] or encourage[e] strikes and picketing against an employer with whom it does not have a dispute, with an object of forcing that secondary employer to cease doing business with a primary employer." See NLRB v. Local 3 Int'l Bhd. of Elec. Workers, 730 F.2d 870, 875-76 (2d Cir. 1984). More specifically, the statute makes it an unfair labor practice to "threaten, coerce, or restrain any person" for the purpose of: (1) "forcing . . . any employer or self-employed person to join any labor or employer organization"; (2) "forcing . . . any person to cease . . . doing business with any other person"; (3) "forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees"; or (4) "forcing or requiring any employer to assign particular work to employees in a particular labor organization . . . ." 29 U.S.C. § 158(4)(A-D).

To state a claim against a union under Section 303 for unlawful secondary activity, the plaintiff must plead facts demonstrating that: (1) "the union or its agents engaged in, [threatened], induced, or encouraged a refusal to perform services"; (2) the purpose of the union's conduct was not to preserve work for the threatened employer's employees, but rather "were tactically calculated to satisfy union objectives

10

elsewhere"; and (3) "the unlawful conduct was a proximate cause of the damage." Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n, 573 F. App'x 66, 67 (2d Cir. 2014). The first element relates to the nature of the union's conduct, the second element concerns its purpose, and the third element addresses causation. In Tru-Art, for example, the Second Circuit found that evidence that a union threatened to "shut down" job site, "claim[ed]" work a contractor was to perform for itself, and told the owner of the project that there could be a "problem" if it continued to use a contractor, were sufficient to sustain a jury verdict awarding damages under Section 303. Id. at 67-68.

Here, Plaintiff plausibly states a claim for relief. The Complaint describes how agents of Local 28 picketed at five different jobs sites where Plaintiff was hired to perform work; made statements that Local 28 had "claimed the work for itself"; threatened general contractors, primary contractors, and owners on each job with labor unrest, unless Plaintiff was terminated-- including making threats to "shut down the jobs"; and in fact succeeded in getting Plaintiff's contract terminated on three occasions. The Complaint therefore plausibly states a claim against Local 28 for unfair labor practices. See Jung Sun Laundry Grp. Corp. v. Laundry, Dry Cleaning, & Allied Workers Joint Bd., No. 10-CV-0468, 2010 WL 4457135, at *4 (S.D.N.Y. Nov. 1, 2010) (allegations that a union picketed in front of a hotel that used

11

the laundry services of the primary employer, and asked the hotel to cease using the primary employer's services sufficiently stated a claim under Section 303). Defendants inappropriately focused upon each of Plaintiff's allegations in a vacuum, when a broader view is necessary to shed light on both Defendants' alleged conduct and motives. See C&D Restoration, 2004 WL 736915, at *3.

III. Plaintiff's Section 303 Claims are Dismissed against the Individual Defendants

Defendants argue that Plaintiff's Section 303 claims must be dismissed against them because union officers cannot be held liable under Section 303 for the union's activities. (Diorio Br. at 4-5; Defs.' Br. at 12.) Plaintiff does not dispute that it cannot recover damages against the Individual Defendants under Section 303, but insist that they must remain parties to this action because Plaintiff seeks injunctive relief against the Individual Defendants in their capacity as union officers. (See Pl.'s Diorio Opp., Docket Entry 22, at 8.)

While Section 303 explicitly permits parties to bring an action seeking "damages" for unfair labor practices, it makes no mention of injunctive relief. 29 U.S.C 187(b). In addition, Courts within this Circuit have uniformly held that injunctive relief is not available when a lawsuit for damages is brought under Section 303. See Iodice v. Calabrese, 345 F. Supp. 248, 270 (S.D.N.Y. 1972), rev'd in part on other grounds, 512 F.2d 383 (2d

Cir. 1975); Haspel v. Bonnaz, Singer & Hand Embroiderers, Tuckers, Stitchers & Pleaters Union, Local 66, 112 F. Supp. 944, 946 (S.D.N.Y. 1953) aff'd, 216 F.2d 192 (2d Cir. 1954). Considering whether district courts have jurisdiction to grant injunctive relief under Section 303, the Judge Edward J. Dimockin noted in Haspel that "Congress has erected an elaborate statutory machinery to cope with [ ] problems [in the field of labor relations]" and district courts only have the power to injunctions prohibiting union collective activity in proscribed circumstances. Haspel, 112 F. Supp. at 946. Judge Dimockin thus warned against reading into the statute a "remedy not expressly provided by Congress." Id. His warning still holds true today.

Since injunctive relief is not available in this situation, Plaintiff's claims against the Individual Defendants under Section 303 are DISMISSED WITH PREJUDICE.

IV. Plaintiff's Tortious Interference Claim is Dismissed

Based upon the very same conduct that forms the basis of Plaintiff's Section 303 claims, Plaintiff alleges in the Complaint that "Defendants actions interfered with Plaintiff's business operations and contractual relationships." (Compl. ¶ 119.) Diorio argues that Plaintiff's tortious interference claim must be dismissed because it is preempted by Section 303 of the LMRA. (Diorio Br. at 8.) The Court agrees. The Supreme Court held in Local 20, Teamsters, Chauffeurs & Helpers Union v. Morton, 377

13

U.S. 252, 261, 84 S. Ct. 1253, 1259, 12 L. Ed. 2d 280 (1964) that "state law has been displaced by § 303 in private damage actions based on peaceful union secondary activities." In addition, the Second Circuit reaffirmed this principle. Monarch Long Beach Corp. v. Soft Drink Workers, Local 812, Int'l Bhd. of Teamsters, 762 F.2d 228, 232 (2d Cir. 1985) (holding that a tortious interference claim was preempted by federal labor law); See also Iodice, 512 F.2d at 390. Plaintiff's tortious interference claim is therefore DISMISSED WITH PREJUDICE.

CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Docket Entries 18, 24) are GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's tortious interference claim, claim for injunctive relief, and claims against the Individual Defendants are DISMISSED WITH PREJUDICE. However, Defendants' motions are otherwise DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March  7 , 2016
       Central Islip, New York